CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

MICHAEL G. LAGRAMA (CABN 252734)
Assistant United States Attorney

 450 Golden Gate Avenue, Box 36055
 San Francisco, California 94102-3495
 Telephone: (415) 436-7241
 Email: Michael.Lagrama@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:26-CR-00286-WHO |
| Plaintiff, | **GOVERNMENT'S MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING AND SENTENCING MEMORANDUM** |
| v. | |
| RIGOBERTO VALLE, | Hearing Date: June 18, 2026 |
| Defendant. | Hearing Time: 1:30 p.m.<br>Judge: Hon. William H. Orrick<br>Court: Courtroom 2; 17th Floor |

## I. OVERVIEW

In an Information, filed on June 12, 2026, defendant Rigoberto Valle is charged with one count of Possession with Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). The United States and Valle jointly request that the Court accept the plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). Valle is subject to a Guidelines sentence of 33-41 months. However, given that Valle possessed relatively small quantities of drugs (including fentanyl), swiftly took responsibility for the instant drug offense, and is a street-level drug dealer, a time-served sentence plus one court day is an appropriate sentence.

This case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin District (hereafter, "the Tenderloin") through a combination of enforcement and dispositions that prevent drug traffickers from returning to the Tenderloin. These efforts will occasionally take the form, as here, of prosecution of street-level dealing where the defendant has a limited criminal history, leading the government to seek expedited prosecution, obtain a federal conviction, and enforce a strict three-year, stay-away order that immediately excludes convicted drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in further drug trafficking. For the reasons set forth below, the government and Valle believe that a below-Guidelines sentence—accounting for the time already served plus one court day in this expedited prosecution—alongside this geographical restriction meet the statutory requirements of Section 3553(a).[1]

## II.    BACKGROUND

### A.    Circumstances of Offense

On April 23, 2026, at approximately 12:02 a.m., Valle was loitering near the intersection of Geary Street and Larkin Street, an area in the Tenderloin known for open-air drug dealing. There, a San Francisco Police Department undercover officer approached Valle and asked for "Thirty" dollars' worth of fentanyl (or "ISO" in street parlance). Valle quickly obliged and gave the undercover officer approximately 0.8 gross grams of fentanyl (packaged inside three plastic baggies) in exchange for $30 in marked city funds. After the undercover officer signaled to other officers that he had successfully purchased drugs from Valle, arresting officers converged on the scene, located Valle, and placed Valle under arrest. In a search incident to arrest, officers found on Valle's person approximately 7.2 gross grams of suspected fentanyl, 18.3 gross grams of suspected methamphetamine, 4.9 gross grams of suspected cocaine, and 8.7 gross grams of cocaine base, and 11 gross grams of suspected heroin, among other drugs. Valle also possessed $368 in US currency in various cash denominations, including the $30 in marked city funds that he had obtained during the undercover drug deal.

---

[1] The facts asserted in this memorandum are primarily based on the parties' plea agreement and the Pretrial Services Report regarding Valle's criminal history.

**B.        Criminal History and Immigration Status**

Valle has prior drug and immigration convictions.  He has three drug convictions.  First, on April 19, 2004, Valle was convicted of possession of a Schedule 2 controlled substance in Denver, Colorado, and was sentenced to three years on probation.  Second, on December 3, 2009, Valle was convicted of transportation or sale of a controlled substance in the San Francisco County Superior Court.  The superior court sentenced Valle to one year in jail and suspended a five-year prison sentence.  Third, on February 10, 2026, Valle was again convicted of transportation or sale of a controlled substance in the San Francisco County Superior Court.  That same day, the superior court sentenced Valle to two years in custody and he was released for time-served after then being in custody for 234 days.

Aside from these drug convictions, Valle was convicted of immigration offenses three times.  First, on February 18, 2005, Valle was convicted of Illegal Entry in the District of Arizona and sentenced to 60 days in jail.  Second, on May 20, 2010, Valle was convicted of Re-entry of a Deported Alien in this Court and was sentenced to one day in custody and three years on supervised release.  Third, on November 12, 2015, Valle was sentenced to Illegal Entry in the District of Arizona and sentenced to 180 days in prison.

Valle is a 40-year-old Honduran national.  According to the U.S. Department of Homeland Security, Valle lacks immigration status and/or is removable under U.S. immigration law.  There is an immigration detainer in place such that the government expects Valle will be transferred to the custody of the Department of Homeland Security for removal proceedings following his release from the custody of the U.S. Marshals Service in this case.  Indeed, in the plea agreement, Valle acknowledges that his conviction in this case "makes it practically inevitable and a virtual certainty that [he] will be removed or deported from the United States."  Plea Agreement ¶ 1.

**III.       MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING**

To advance the goal of this accelerated disposition, the parties jointly move the Court to proceed to sentencing without a presentence investigation report during the same hearing as Valle's change of plea, or as shortly thereafter as is practicable.  This will achieve the expedited proceeding contemplated by both parties.  The Court may sentence without a presentence investigation report if it "finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C.

§ 3553" and "explains its finding on the record." Fed. R. Crim. Proc. 32(c)(1)(A)(ii); *see also* Fed. R. Crim. P. 32(b)(1); U.S.S.G. § 6A1.1; Crim. L.R. 32-1(b). The government respectfully submits that the record here—including the criminal complaint, the plea agreement, and the parties' sentencing memoranda, which each and collectively detail the offense conduct and other factors relevant under Section 3553—enable the Court to meaningfully exercise its sentencing authority under Section 3553 and to proceed to sentencing without the need for a presentence investigation report. The parties request that the Court explain its findings and the sufficiency of the record at sentencing.

## IV.    APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The government calculates the following Guidelines range:

a.    Base Offense Level, U.S.S.G. §2D1.1(a)(5), (c)(9):                22
(At least 80 KG but less than 100 KG of Converted Drug Weight)

b.    Acceptance of Responsibility:                                    -3

If I meet the requirements of U.S.S.G. § 3E1.1, I may be entitled to a three-level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing.

c.    Adjusted Offense Level:                                          19

The government calculates a Criminal History Category of II (3 points). An Adjusted Offense Level of 19 and a Criminal History Category of II yields an advisory Guidelines range of 33-41 months. *See* U.S.S.G. ch. 5, pt. A. The government also seeks a three-year term of supervised release (as required by statute) and imposition of the mandatory $100 special assessment.

/ / /

/ / /

/ / /

## V.    SENTENCING RECOMMENDATION

Consistent with the plea agreement in this case, the parties jointly request a sentence of time served plus one court day and a three-year term of supervised release that includes, among other things, a special condition that Valle may not re-enter the Tenderloin during the period of supervised release. This stay-away condition is a critical component of the plea bargain because it prevents Valle from returning to the Tenderloin, from which his drug trafficking conviction arises.

### A.    Section 3553 Factors

#### 1.    *Nature and Circumstances of Offense; History and Characteristics of Defendant*

The nature and circumstances of the offense, and Valle's history and characteristics, warrant a sentence of time-served plus one court day. Here, Valle not only intended to distribute fentanyl, he also, in fact, sold $30 worth of this extremely lethal drug to an undercover police officer. By selling fentanyl on the streets of San Francisco, he endangered the lives of people and detrimentally impacted the community.

Aside from this most recent drug dealing incident, Valle has three prior drug-related convictions from 2004, 2009, and 2026, respectively. It is particularly concerning that he committed the instant drug offense within three months after his release from the San Francisco County Jail. Specifically, on February 10, 2026, Valle was convicted of one count of Transportation or Sale of a Controlled Substance in violation of California Health and Safety Code section 11379. Although the superior court sentenced Valle to two years, he received custody credits and was released on February 10, 2026, after a time-served sentence of 234 days. Approximately two and a half months later (72 days), Valle remained undeterred and committed the instant drug dealing offense on April 23, 2026. Furthermore, Valle was convicted of immigration criminal offenses in 2005, 2010, and 2015, respectively. Thus, Valle has shown a lack of respect for the laws of the United States.

Nevertheless, during the instant offense, Valle possessed relatively small quantities of drugs: 7.2 gross grams of fentanyl (plus the 0.8 gross grams of fentanyl sold to the undercover officer), 18.3 grams of methamphetamine, and 8.7 grams of cocaine base, among other small quantities of drugs. Valle therefore appears to be a street-level drug dealer, who would normally be prosecuted by local law enforcement. During this incident, he did not resist arrest or possess a weapon. After his arrest, Valle

swiftly took responsibility for his latest drug offense and has remained in custody since his arrest on June 10, 2026.  This is the first time that Valle has been prosecuted in federal court for a drug offense, and his swift acceptance of responsibility indicates that he appreciates the gravity of this case and the attendant maximum penalties.  Moreover, to his credit, Valle does not have any history of offenses involving violence or the use or possession of a dangerous weapon.

Further, although his personal circumstances do not excuse his conduct, Valle experienced extreme poverty growing up in Honduras, he never went to school, and he is unable to read and write.  Rather, Valle started working as a child to survive and his family struggled to have enough to eat.  Valle has also held legitimate jobs, such as doing field work, working as a painter and mover, and doing roofing and construction work.  Valle claims that he turned to drug dealing to supplement his income, so that he could support himself and his family back home in Honduras.  Valle has three children and elderly parents in Honduras.  Valle claims his parents are in poor health and that he intends to remain in Honduras to help care for them, and that he does not plan to return to the United States despite his history of violating immigration laws.  On balance, given the aforementioned factors and the objectives of the Fast-Track Program, a sentence of time-served plus one court day is appropriate.

     2. ***Need for Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment; to Afford Adequate Deterrence to Criminal Conduct; and to Protect the Public from Further Crimes of the Defendant***

The Tenderloin, defined in the plea agreement to include the historic Tenderloin District and much of the South of Market neighborhood, is in crisis.  As the Court is well aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances, like fentanyl and methamphetamine, has exacted a crushing human toll in the Tenderloin.  The Tenderloin open-air drug market not only creates suffering for its participants—including staggering amounts of overdoses and fatalities—but also dire externalities for the people and families that live and work in the Tenderloin, as well as for San Francisco itself.  The effects of Valle's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

The applicable Guidelines range for Valle's conduct is 33–41 months in light of the relevant conduct and amount (and variety) of controlled substances he possessed at the time of his arrest.  The proposed sentence—of time served plus one day and a three-year term of supervised release with a

highly-restrictive geographic restriction—is a downward variance from the applicable Guidelines range but one that the government submits is appropriate given Valle's status as a street-level drug dealer, the unique problem facing the Tenderloin, and the need for deterrence and protection of the public.

To benefit from an agreement by the government to recommend a sentence of time served plus one day, Valle waived detention and has been in continuous custody since his arrest on federal charges. He also waived indictment, agreed promptly to plead guilty and proceed to sentencing, and agreed to be subject to a three-year term of supervised release that includes a strict stay-away condition from the Tenderloin. Valle is on notice that a return to the Tenderloin (in violation of his supervised release terms) will invite new charges and/or supervised release violations. He is also aware that it is virtually certain that he will be deported following the conclusion of his case.

This disposition results in a drug-trafficking conviction within weeks of arrest (not months or years), immediate separation of Valle from the Tenderloin, and the prevention of Valle's return to the Tenderloin. The speed with which this case has moved will free up other government resources to prosecute additional federal crimes, including in the Tenderloin. And with this federal conviction, Valle is now on notice that any subsequent criminal conduct will be met with the government advocating for a far greater sentence.

**B.      The Necessity of the Proposed Special Conditions of Supervised Release**

A three-year term of supervised release is required by statute for the drug-trafficking offense to which Valle has agreed to plead guilty. *See* 21 U.S.C. § 841(b)(1)(C). It is also essential to this disposition. In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug dealers from the Tenderloin (given that Valle has remained in custody since he was arrested) and to effect a strict stay-away from the Tenderloin for three years. Under the terms of supervised release as contemplated herein, not only will Valle be prohibited from engaging in any further unlawful conduct, but he will also be prohibited from entering the Tenderloin without prior approval of the Probation Office:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Laguna Street, on the north by Sutter Street, on the east by Powell Street and 5th Street, and on the south by Folsom Street.

Plea Agreement ¶ Appendix A (Special Conditions of Supervision). Combined with a search condition

with or without suspicion—to which the parties have also agreed, *see id.*—the goals of Section 3553(a), including protection of the public and meaningful deterrence, will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained. The stay-away condition is also necessary given the particular circumstances of Tenderloin drug trafficking: defendants previously convicted of selling drugs in the Tenderloin are prone to recidivate, and they frequently return to the Tenderloin to do so, even following removal from the United States. *See, e.g.*, *United States v. Erazo-Centeno*, No. 3:23-cr-00002 CRB; *United States v. Gamez-Arguilio*, No. 3:17-cr-00553 CRB.

On the facts of this particular case, and in light of the provisions of the parties' plea agreement, the government respectfully submits that the disposition recommended herein is sufficient but not greater than necessary to accomplish the goals of Section 3553(a).

## VI.    CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence Valle to time served plus one court day, to be followed by a term of supervised release of three years, to include the special conditions of supervision agreed to by the parties in the plea agreement, including the stay-away condition from the Tenderloin.

DATED: June 15, 2026

Respectfully Submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Michael G. Lagrama*
MICHAEL G. LAGRAMA
Assistant United States Attorney